T.C. Summary Opinion 2019-34

UNITED STATES TAX COURT

ROGER G. MAKI AND LILANE J. GERVAIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12958-17S.                    Filed November 4, 2019.

Roger G. Maki and Lilane J. Gervais, pro sese.

<u>Patsy A. Clark</u>, for respondent.

SUMMARY OPINION

GERBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $17,925 income tax deficiency and a $3,585 section 6662(a) accuracy-related penalty[2] with respect to petitioners' 2013 tax year. The deficiency is in large part attributable to the disallowance of travel and away from home expense deductions claimed in connection with petitioner Roger Maki's timberland activity. The issues remaining for our consideration are whether petitioners paid business expenses and, if so, whether they are ordinary and necessary travel and away from home expenses.

## Background

Petitioners resided in Washington State when their petition was filed. During 2013 petitioners' residence was in Des Moines, King County, Washington. Roger Maki (petitioner) during the early 1980s inherited from his mother more than 100 acres of Washington State land. The land was in two counties, and petitioner traveled substantially every week to take care of and monitor timber on the land. The round trip from petitioners' residence to and from the properties was approximately 300 miles for each visit. The inherited land was valuable because of the timber situated on it.

---

[2]At trial respondent conceded the sec. 6662(a) penalty.

Petitioner has continuously experienced physical problems and needs to walk and stay active. One way he has accomplished this and also provided for his future was to plant trees and care for them so that they could be harvested for future financial needs. Petitioner began this process during the 1980s after he inherited the land from his mother. As of the time of trial the trees were approaching maturity and two of the properties had trees with a harvest value of over $1 million.

Before 2013 one of petitioner's properties was stripped of fir trees during a time when he was "very, very sick" and not mobile enough to check on the trees on the property. Commercial timber companies hire people to regularly check and patrol their timberland to curb or thwart illegal harvesting. Petitioner was unable to afford the cost of hiring people to check and patrol. That is one of the reasons he regularly visited the timber properties to make sure that he did not lose value because of illegal harvesting or other types of damage. On his visits he also planted trees and monitored his properties for any other activity, including the posting of signs on trees which might signify improper intended use of his trees.

Petitioner maintained a log listing the days that he visited and stayed on the properties. The log, along with other records, was maintained in the building he uses when visiting the properties. Petitioner used the log to make a summary of

his visits during 2013 so that he could present it to respondent during the pretrial phase of his case. After he prepared the summary, the original contemporaneous logs and other records were stolen when the building in which they were maintained was vandalized. The summary reflects that petitioner was present at the timber properties a total of 161 days during 2013. The summary also reflects that petitioner made 47 round trips from his residence to the timber properties. Some of the visits were as short as one day, but most were three-day visits.

Petitioners' 2013 income tax return reflects that their sources of income were Social Security benefits, interest, dividends, capital gains, and pensions. Petitioner's timber activity was reported on a Schedule C, Profit or Loss From Business, attached to the 2013 joint income tax return. No income from the timber activity was reported for the 2013 year, and the following deductions were claimed: car and truck expense, $450; insurance, $964; taxes and licenses, $4,483; travel, $7,011; and other expenses (away from home per diem), $55,925. In the notice of deficiency respondent disallowed only the $7,011 of travel expenses and the $55,925 of per diem expenses. The only other adjustment in the notice of deficiency is an increase to gross income for Social Security benefits received and not reported of $18,856. Petitioners have not contested the Social Security income adjustment.

Discussion

Respondent's contentions with respect to the disallowed deductions are that petitioners have not adequately substantiated the expenditures and/or shown that they were ordinary and necessary business expenses. Petitioners counter that they must monitor the property to protect the timber and that their testimony and documentation substantiate and justify the claimed deductions.

Section 162(a)(2) provides for the deduction of ordinary and necessary business expenses, including travel expenses while away from home in the pursuit of a trade or business. Those expenses must be incurred while "away from home" overnight. Commissioner v. Flowers, 326 U.S. 465, 470-472 (1946). We note that respondent has not questioned whether petitioner is engaged in a business activity or whether he was "away from home" when he visited the timber properties. Accordingly, we proceed to decide the amount, if any, of the travel and away from home deductions to which petitioners are entitled.

Respondent's primary argument with respect to substantiation is that petitioner did not provide a log and the information he provided was inaccurate. Petitioner established a normal pattern of travel, usually three days each week, and that pattern rarely varied. He always traveled to the same locations. His testimony that he maintained a log is credible, and his summary, received in evidence, was

extracted from the log he maintained. In any event, the repetitive pattern of travel would be easily verified because it was essentially the same each week. That fact along with petitioner's credible testimony is sufficient to show the occasions on which he traveled to and visited the lumber properties. Accordingly, we have found that petitioner made 47 trips and spent 161 days at his timber properties during 2013. Finally, we are persuaded that petitioner's travel expenses were ordinary and necessary because of the need to monitor the timber and to maintain and plant trees.

A self-employed individual can deduct meal expenses computed at the Federal rate established for the locality in which meal expenses were incurred while away from home. See Rev. Proc. 2011-47, sec. 1, 2011-42 I.R.B. 520, 520. The Federal published rate is deemed substantiated for purposes of section 1.274-5T(b)(2)(i) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46015, 46016 (Nov. 6, 1985). Self-employed individuals may not use this method to substantiate lodging expenses. See Rev. Proc. 2011-47, sec. 1.

Petitioners used the per diem rates for "Luxury Water Travel" to compute the annual per diem deduction. The rates used ranged from $320 to $374 per day and are intended for away from home expenses incurred on an ocean liner or cruise ship. The rates are based on the highest Federal per diem rates, which

include lodging, meals, and incidentals.  Using the luxury rates, petitioners computed and deducted $55,925 in away from home per diem expenses for 2013.  We note that petitioners did not provide any evidence of the lodging expenses actually incurred in the timber activity during 2013.

Under Rev. Proc. 2011-47, 2011-42 I.R.B. 520, the Federal per diem rate (for meals) that applies to many smaller localities, including the counties in which petitioner's timber land is situated, is $46.  Petitioner through his testimony and the summary taken from his logs has shown that he was away from home on business for 161 days during 2013.  Accordingly, he is entitled to deduct $7,406 of per diem expenses for 2013 (161 times $46).

Petitioner's $7,011 travel deduction was computed at the permitted per mile rate times the number of round trips we have found he made during 2013 to his properties.  Although respondent questioned whether petitioner had traveled for business, he did not question the established mileage rate.  Because we have found both that petitioner's travel was for business and that the mileage in his logs was substantiated, he is entitled to the $7,011 deduction.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.